**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Maurice Patterson, | ) | No. CV 10-1153-PHX-JAT |
| Petitioner, | ) ) | **ORDER** |
| vs. | ) ) | |
| Charles L. Ryan; et al., | ) ) ) | |
| Respondents. | ) ) ) | |

Pending before the Court is Petitioner, Maurice Patterson's Petition for Writ of Habeas Corpus (Petition). (Doc. 1). The Magistrate Judge to whom this case was assigned issued a Report and Recommendation (R&R) recommending that this Court deny the Petition. (Doc. 19). Petitioner has filed an Objection to the R&R (Objection). (Doc. 20).

**I.     Factual Background**

On March 27, 2007, a direct complaint was filed in Maricopa County Superior Court charging Patterson with possession or use of narcotic drugs. R&R at 2. Following his pretrial release, Patterson failed to appear for his preliminary hearing scheduled for April 3, 2007, and the trial court issued a warrant for his arrest. *Id*. He was arrested 73 days later, on June 15, 2007. *Id.* Patterson was indicted on June 21, 2007, where he waived a preliminary hearing, entered into a plea agreement, and was released for drug and alcohol monitoring and ordered to appear at sentencing scheduled for July 2, 2007. *Id.*

Patterson failed to appear for sentencing on July 2, 2007, due to a family accident;

counsel successfully moved to continue the sentencing to July 16, 2007, and the 14 days during that time period were excluded. *Id.* Patterson appeared with counsel on July 16, 2007; the sentencing was again continued for 30 days to allow defense counsel to prepare mitigation evidence, and that 30-day time period was also excluded. *Id.* On August 15, 2007, sentencing was again continued to August 23, 2007, and that period of 8 days was excluded. *Id.* On August 23, 2007, neither Patterson nor his counsel appeared and a bench warrant was issued for Patterson's arrest. *Id.*

Patterson was again arrested on December 12, 2007, 102 days after the warrant was issued. *Id.* Before the trial court on that day, the State withdrew the plea agreement without objection by counsel, and the trial court set the initial pretrial conference for January 14, 2008. *Id.* On January 3, 2008, Patterson filed a *pro se* state habeas petition, seeking suppression of evidence and dismissal of the case because of a lack of probable cause to stop him, and because of the excessive force used to restrain him. *Id.* On January 14, 2008, the State filed allegations of prior convictions, and explained that Patterson was ineligible for probation pursuant to A.R.S. § 13-901.01 because of his prior drug convictions, Patterson also filed a motion to dismiss his attorney and represent himself, and the trial court set a pretrial conference for February 14, 2008. *Id.*

On January 29, 2008, Patterson filed several *pro se* documents: a second state habeas petition, two motions to dismiss, and a motion for disclosure. *Id.* at 3. At the February 14 hearing, Patterson declined the State's second plea offer of a Class 4 felony without priors and a 2.5 year prison term, and the trial court set the next hearing for February 22, 2008. *Id.* The next day Patterson filed another motion, reiterating the argument raised in his motion to dismiss: that the alleged drug did not exist because the substance had been field-tested and it came back negative. *Id.*

At the hearing on February 22, 2008, the trial court granted Patterson's request to represent himself and ordered counsel to remain as advisory counsel. *Id.* The trial court then conducted an evidentiary hearing on the legality of Patterson's stop and arrest. *Id.* The

1    arresting officer was examined by the State and cross-examined by Patterson, and the matter
2    was taken under advisement. *Id.* The trial court subsequently denied all of Patterson's
3    motions and filed Patterson's executed Waiver of Counsel form. *Id.* Patterson then filed 15
4    additional *pro se* documents, including some that were duplicative of earlier filings. *Id.*

5          On March 21, 2008, the trial court denied three of Patterson's pending motions and
6    allowed oral argument on the remaining motions. *Id.* Following oral argument, the trial
7    court noted that Patterson had knowingly and intelligently rejected a revised plea offer,
8    ordered withdrawal of Patterson's attorney,[1] ordered the appointment of new advisory
9    counsel, and denied all but three remaining motions. *Id.*

10         On March 25, 2008, Patterson filed seven more *pro se* motions, including another
11   state habeas petition and a request for independent chemical analysis. (Ex. HH). On April
12   3, 2008, the trial court denied all pending motions. (Ex. II).

13         Following the filing of eight additional *pro se* documents on April 8, 2008, the trial
14   judge recused himself and the case was transferred to another judge. R&R at 4. On May 27,
15   2008, the trial court heard oral argument on all pending motions, including four additional
16   *pro se* documents filed after the case had been reassigned; the trial court denied all pending
17   motions. *Id.*; (Ex. MM).

18         On June 2, 2008, Patterson requested a status conference on three of the motions that
19   he had filed. (Ex. NN). On June 4, 2008, the trial court again heard oral argument and
20   denied all pending motions, conducted voir dire and empaneled the jury. R&R at 4. On June
21   5, 2008, following the State's opening statement and Patterson's waiver of an opening
22   statement, the prosecutor began examining the arresting officer. *Id.* Advisory counsel then
23   informed the trial court that Patterson wanted advisory counsel to represent him because of
24   a medical condition that prevented Patterson from proceeding with the trial. *Id.* The jury

---

[1] Advisory counsel sought withdrawal after being named as a defendant in a civil lawsuit filed by Patterson.

- 3 -

1 was excused until June 9, 2008. *Id.*

2    On June 9, 2008, Patterson informed the trial court that he was physically able to
3 proceed. *Id.* Following the testimony of two police officers, a forensic scientist testified that
4 she had analyzed the substance at issue and determined that it was crack cocaine. *Id.*
5 Patterson did not testify; the trial court denied his motion for judgment of acquittal. *Id.*
6 Following closing arguments and instructions to the jury, the jury deliberated and convicted
7 Patterson of a class 4 felony: possession of a narcotic drug. *Id.*; (Ex. TT).

8    On June 12, 2008, Patterson filed five more *pro se* motions, including a reiteration of
9 his motion for probation eligibility under A.R.S. § 13-901.01. R&R at 4. On July 10, 2008,
10 the State presented evidence on the prior convictions linking Patterson to three prior felony
11 convictions, the third of which counted as a historical prior felony conviction. *Id.*; (Ex. YY
12 at 18-21). The trial court took Patterson's motion and the allegations of prior convictions
13 under advisement. *Id.*[2] At sentencing on July 17, 2008, the State argued that it had proven
14 one historical prior felony conviction, and recommended a presumptive term of 4.5 years,
15 which the trial court adopted. *Id.* at 5.

16    On January 7, 2009, Patterson filed a *pro se* petition with the Superior Court for
17 post-conviction relief, raising six issues. *Id.* at 6. In addition, he filed two more *pro se* state
18 habeas petitions and a motion to dismiss. *Id.*; (Ex. NNN-QQQ).

19    On January 30, 2009, Patterson filed his appeal with the Arizona Court of Appeals.
20 (Ex. EEE). In his opening brief, Patterson argued a violation of his constitutional right to
21 equal protection of the law because he was denied probation only because he had been tried

---

[2]In taking the matters under advisement, the trial court acknowledged a split of authority in decisions from a department of each of the two state appellate court divisions. The issue causing conflicting decisions was whether a preparatory crime should qualify as probation-intensifying second strike under § 13-901.01 when the same crime benefits a defendant under the same statute as a probation-eligible first strike. *See Raney v. Lindberg*, 206 Ariz. 193, 198-200 (Ariz. Ct. App. 2003); *State v. Ossana*, 199 Ariz. 459, 461-62 (Ariz. Ct. App. 2001).

- 4 -

1  in Maricopa County, and the trial court followed the decision in Division One. R&R at 5.
2  He argued that had he been tried in Pima County, he would have been eligible for probation.
3  *Id.*

4  On April 29, 2009, while his appeal was pending and following the trial court's
5  briefing schedule, Patterson filed a post-conviction petition arguing that the trial court erred
6  when it based his sentence on a finding of one historical prior felony conviction that was
7  older than ten years. *Id.* at 6; (Ex. TTT).

8  On October 20, 2009, in a published opinion affirming Patterson's conviction and
9  sentence, the court of appeals concluded that Patterson had failed to prove an equal
10 protection violation. R&R at 5; (Ex. HHH). In so ruling, the court of appeals reasoned as
11 follows:

> The Arizona Supreme Court has recognized that our court "consider[s] decisions of coordinate courts as highly persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous principles, or conditions have changed so as to render these prior decisions inapplicable." *Scappaticci*, 135 Ariz. at 461, 662 P.2d at 136 (quoting *Castillo v. Indus. Comm'n*, 21 Ariz. App. 465, 471, 520 P.2d 1142, 1148 (1974)). Departments of our court adhere to this principle. *E.g.*, *White v. Greater Ariz. Bicycling Ass'n*, 216 Ariz. 133, 137-38, ¶ 14, 163 P.3d 1083, 1087-88 (App. 2007); *In re Estate of Gordon*, 207 Ariz. 401, 405, ¶ 18, 87 P.3d 89, 93 (App. 2004) (expressing the principle that "[w]hen we disagree with a prior decision of our Court . . . we should do so only upon the most cogent of reasons being presented" (quoting *Neil v. McGinnis Equip. Co.*, 2 Ariz. App. 59, 62, 406 P. 2d 409, 412 (1965 )); *Wilson*, 162 Ariz. at 250, 782 P.2d at 726; *State v. Dungan*, 149 Ariz. 357, 361, 718 P.2d 1010, 1014 (App. 1985).
>
> The superior court is bound by our decisions, regardless of the division out of which they arise. *See Francis v. Ariz. Dep't of Transp.*, 192 Ariz. 269, 271, 963 P.2d 1092, 1094 (App. 1998). Because the superior court is one court, there is no legal distinction between courts located in Division 1 and Division 2 except as specified by statute. *See Marks*, 186 Ariz. at 142, 920 P. 2d at 22. When confronted with conflicting decisions by different departments of our court, a trial court must use its discretion to adopt the decision that most persuasively interprets the law, regardless of the division to which the department making the decision belongs or within which the trial court sits. This is the standard trial courts already use when evaluating legal authority from other states to decide an issue with no Arizona law on point. *See Kotterman v. Killian*, 193 Ariz. 273, 291, 972 P.2d 606, 624 (1999) (stating that a court "must decide how persuasive the legal opinions of other jurisdictions will be to [its] holdings"); *Gaethje v. Gaethje*, 7 Ariz. App. 544, 546-47, 441 P.2d 579, 581-82 (1968) (recognizing that the trial court relied on Washington case law over California and Texas case law). Similarly, the

>geographical location of the trial court is of no consequence in determining which of two conflicting decisions between departments of this court the superior court must follow.

R&R at 5-6.

On November 23, 2009, Patterson petitioned for review in the Arizona Supreme Court; the court denied review. *Id.* at 6. On December 18, 2009, the Superior Court denied Patterson's petition for post-conviction relief as both precluded and without merit. *Id.*; (Ex. XXX). Patterson did not petition this decision for review in the court of appeals. R&R at 6; (Ex. YYY). He filed his federal petition on May 26, 2010. R&R at 6.

## II. Review of Report and Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [Magistrate Judge's] recommendations to which the parties object.").

The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is incarcerated based on a state conviction. With respect to any claims that Petitioner exhausted before the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the Petition on those claims unless "a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law" or was based on an unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Further, this Court must presume the correctness of the state court's factual findings regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998). If Petitioner failed to exhaust a claim before the state courts (and is now barred from exhausting the claim resulting in a procedural default of the claim) this Court

must decline to reach the merits of that claim unless Petitioner shows cause and prejudice to excuse that procedural default. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). However, "[a]n application for a writ of habeas corpus may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added).

In his Petition, Petitioner raised four theories for habeas relief: 1) that he was improperly sentenced to a term of imprisonment instead of probation and to a term greater than the presumptive, which violated his equal protection rights and constituted double jeopardy; 2) that the traffic stop which led to his arrest was an illegal search and seizure; 3) that he was denied the right to a speedy trial and to the effective assistance of trial counsel; and 4) that the prosecutors committed misconduct and Petitioner was not given a full and fair hearing on his motion to suppress.

Having reviewed each of the issues Petitioner raised de novo, and in the Court's discretion because Petitioner has not exhausted the remedies available to him on some of the issues claimed in the courts of the State, the Court now denies each claim in the Petition.

### A. Fifth and Fourteenth Amendment Issues

Petitioner argues his conviction was unconstitutional because it was a violation of his equal protection rights and constituted double jeopardy.

#### 1. Equal Protection

Petitioner claims that his denial of probation by the trial court equates to unequal treatment under the law because he contends he could have been treated differently depending on where his trial was held and which appellate decision the trial court followed. Petition at 6. In order to constitute a valid objection for purposes of a habeas petition, Petitioner must show that the "state court decision [was] contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 71. The state court decision did not implicate equal protection.

The trial court followed the decision of the Arizona Court of Appeals Division One

in *Raney v. Lindberg*, 206 Ariz. 193, 198-200 (Ariz. Ct. App. 2003), under which the Petitioner received a 4.5 year sentence. If the trial court had chosen to follow the decision of the Arizona Court of Appeals Division Two in *State v. Ossana*, 199 Ariz. 459, 461-62 (Ariz. Ct. App. 2001), Petitioner could have been eligible for probation.

As the Arizona Court of Appeals pointed out in denying Petitioner's appeal, the trial court must use its discretion when confronted with conflicting decisions by different departments of the court of appeals, "to adopt the decision that most persuasively interprets the law, regardless of the division to which the department making the decision belongs or within which the trial court sits." (Ex. HHH at 19); R&R at 5. Accordingly, the key inquiry is whether the trial court abused its discretion in deciding that Division One's decision in *Raney* was the most persuasive interpretation of the law.

This is not the issue Petitioner repeatedly raises. Petitioner stated in his Reply to Petition (Reply) and in his Objection that the issue is equal treatment. (Doc. 18 at 13); Objection at 3. He claimed the Arizona Court of Appeals erred by noting that the superior court had not followed a geographical rule, which Petitioner claimed does not answer his equal protection challenge. Reply at 13; Objection at 3. The fact that the superior court does not follow a geographical rule, however, does answer the equal protection issue.

Petitioner himself based his equal protection claim on the geographical rule issue. Petitioner originally asserted in his Opening Brief to the Arizona Court of Appeals that "had [he] been tried in Tucson, he would have been eligible for mandatory probation under Proposition 200 based on *State v. Ossana* . . . . [so] [t]he determination whether probation [was] mandatory or imprisonment [was] the appropriate sentence apparently depend[ed] on the geographical location of the offense." ( Ex. EEE at 8). In answering Petitioner's assertion about the geographical rule, and noting that the superior court's decision was not based on location, the Arizona Court of Appeals ruled on Petitioner's equal protection claim. The Arizona Court of Appeals pointed out that the trial court reviewed both the decisions in *Raney* and in *Ossana* and concluded that *Ossana* was "not well-founded" and that "the

- 8 -

greater weight of the case law" supported a decision in line with *Raney* in Petitioner's case. (Ex. HHH at 20).

Accordingly, the Arizona Court of Appeals properly determined that the superior court had not abused its discretion in denying Petitioner's appeal. Because the superior court did not abuse its discretion there was not an unreasonable application of clearly established Federal law and Petitioner's equal protection rights were not violated.

### 2. Double Jeopardy

Petitioner next contends that the use of a 10-year-old prior conviction to enhance his sentence as a repeat offender constituted double jeopardy under the Fifth Amendment. Petition at 6. The R&R recounts the law governing this claim in stating that the United States Supreme Court has repeatedly rejected any double jeopardy challenges to recidivist statutes. R&R at 6 (citing *Witte v. United States*, 515 U.S. 389, 400 (1995)). Petitioner has not objected to this legal standard applied by the R&R.

Petitioner's sentence was calculated at a 4.5 year presumptive sentence because he is a recidivist offender. Petitioner's Objection reiterated his argument from both his Reply and Petition that his sentence was an improper application of Arizona law by the trial court. Objection at 3; Reply at 11; Petition at 6. This is not a proper issue before this Court because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Accordingly, the Court finds his Fifth Amendment rights were not violated.

Notwithstanding Petitioner's failure to state a legal challenge, the Court finds the Petitioner's claim without merit. Petitioner was sentenced as a non dangerous repetitive offender. (Ex. CCC at 2). Petitioner claims he was wrongfully sentenced to a 4.5 year presumptive sentence as a *category one* repetitive offender under Arizona Revised Statutes 13-703(A). Reply at 11; Objection at 3. The presumptive sentence for a category one repetitive offender is indeed 2.5 years as Petitioner notes. A.R.S. § 13-703(H); Reply at 12. Petitioner, however, was given the presumptive sentence for a *category two* repetitive

- 9 -

1 offender, which is 4.5 years.  A.R.S. § 13-703(I).

2 Petitioner is a category two not a category one repetitive offender.  A category two
3 repetitive offender is one who is: 1) at least 18 years of age or has been tried as an adult; 2)
4 stands convicted of a felony; and 3) has one historical prior conviction.  A.R.S. § 13-
5 703(B)(2).

6 First, Petitioner was at least eighteen (18) years of age when he was convicted and
7 sentenced.  (Ex. A) (showing Petitioner's DOB is May 1, 1959).  Second, Petitioner stood
8 convicted of a class 4 felony when he was sentenced.  (Ex. CCC at 2).  Finally, Petitioner had
9 one historical prior conviction when he was sentenced.  (*Id.*)

10 Petitioner seems to have a misconception about the applicable definition of a historical
11 prior conviction.  Under A.R.S. § 13-105(22)(d), a historical prior conviction is "[a]ny felony
12 conviction that is a third or more prior felony conviction."  The trial court deemed
13 Petitioner's conviction on December 10, 1997, CR 97-11161, for possession of narcotic
14 drugs committed on September 18, 1997, to be a historical prior conviction under this
15 definition.  (Ex. AAA at 5; Ex. YY at 18-21).  The trial court then sentenced Petitioner
16 accordingly, using this historical prior conviction to fulfill the elements for a category two
17 repetitive offender.

18 **B.     Fourth Amendment Issue**

19 Petitioner claims that the traffic stop which led to his arrest was an illegal search and
20 seizure.  Petition at 7.  Petitioner objects to the finding of the R&R on the ground that the
21 merits of this issue were not decided.  Objection at 3.  As the R&R points out, however,
22 Petitioner did receive a full and fair hearing in the state court on whether he was subjected
23 to an illegal search and seizure.  R&R at 7.  Because "the state has provided [the Petitioner]
24 an opportunity for full and fair litigation of his Fourth Amendment claim," this Court is
25 barred from granting federal habeas relief.  *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th
26 Cir. 2005).

27
28
- 10 -

**C.     Sixth Amendment Issues**

In his third habeas claim, Petitioner argues that his right to a speedy trial was violated and he suffered from ineffective assistance of counsel. Petition at 8.

**1.     Right to a Speedy Trial**

Petitioner originally claims in his Petition and Reply that his federal right to a speedy trial was violated because his motion to dismiss for a violation of his state right to a speedy trial, (*see* Ex. JJ; Ex. LL), was dismissed by the Superior Court (*see* Ex. MM). Petition at 8; Reply at 8. Petitioner subsequently changed this Sixth Amendment claim to a violation of due process in his Objection. Objection at 4.

The Sixth Amendment right to a speedy trial is a federal issue. As the R&R recounts the law governing this claim, the time from charging to trial needs to approach one year for the Sixth Amendment to even be implicated. R&R at 7 (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). Petitioner's time until trial was approximately 8 months, which does not constitute a violation of the federal right to a speedy trial. (*Id.*) Accordingly, Petitioner's Sixth Amendment right was not violated.

Petitioner's Objection reclassified this claim as a possible violation of the Fifth and Fourteenth Amendment guarantees to not be deprived of liberty without due process of law. Objection at 4. Petitioner, however, is not permitted to petition this Court for habeas relief of the Superior Court's dismissal of his speedy trial claim under Arizona law. The Superior Court adjudicated Petitioner's state-claim under state-law and dismissed the claim. (Ex. MM). Petitioner did not appeal that decision. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. Accordingly, Petitioner's due process objection is also denied.

**2.     Effectiveness of Counsel**

Petitioner claims his trial counsel was ineffective. Petitioner's theories of ineffective assistance of counsel fall into two categories: 1) that neither of his previous attorneys attempted to suppress evidence obtained from his arrest; and 2) they also failed to attempt

1  to have a second independent drug test conducted. Petition at 8.

2  Generally, under *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny, "[a]n ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (internal citations and quotations omitted). A deficient performance is one that is "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In order to show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (conditioning a Fourth-Amendment-based ineffective-assistance claim on an underlying meritorious Fourth-Amendment issue).

First, Petitioner reiterated in his Objection that it was the fact that his attorneys did not attempt to suppress evidence that constituted ineffective assistance because this brought about an unfair outcome. Objection at 4. Petitioner further erroneously claims that the suppression issue was never decided on the merits. *Id.* As the R&R illustrates, the suppression issue was decided on by the trial court. R&R at 7. When Petitioner himself tried to suppress the evidence the *pro se* motion was denied. *Id.* Accordingly, Petitioner has not met his burden to show that had his attorneys done what he contends they should have, the result would have been any different. Petitioner's attorney's "failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989).

Second, Petitioner's speculation about what a second independent drug test may have shown does not establish prejudice, especially in light of what the actual evidence did show– that the substance he was carrying was crack cocaine. R&R at 8. Speculation about what

could be found is insufficient to satisfy prejudice. *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001). Because Petitioner has not shown his defense was prejudiced, he has not met his burden to show he was subjected to ineffective assistance of counsel.

### D. Misconduct

In his fourth habeas claim, Petitioner alleged he was subjected to prosecutorial and judicial misconduct for a variety of reasons. Petition at 9. The R&R summarized the allegations as follows:

> (1) both prosecutors committed misconduct by changing the date of the incident, charging possession of a narcotic drug when chemical analysis was not done until six months later, and by not dismissing the case; and (2) the trial judge committed misconduct by denying Patterson a second independent drug test, and by never ruling on the suppression issue, which resulted in the lack of a full and fair litigation of the issue.

R&R at 8.

#### 1. Prosecutorial Misconduct

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is fairness of trial." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "To succeed on a motion for a new trial based on prosecutorial misconduct, a defendant must show first that the prosecution engaged in improper conduct and second that it was more probable than not that the prosecutor's conduct materially affected the fairness of the trial." *U.S. v. Smith*, 893 F.2d 1573, 1583 (9th Cir. 1990).

None of the Petitioner's allegations has merit. As the R&R pointed out, there is no evidence in the state court record that the date of the incident was changed. R&R at 8. Thus there is no showing by the Petitioner that the prosecution engaged in improper conduct. Further, the date when the chemical analysis determined that Petitioner possessed crack cocaine does not imply that Petitioner received an unfair trial. Accordingly, Petitioner has not shown that he was subjected to prosecutorial misconduct.

#### 2. Judicial Misconduct

In order to constitute a valid objection for purposes of a habeas petition, Petitioner

- 13 -

must show that the "state court decision [was] contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 71. As the R&R shows, Petitioner received full and fair litigation on issues he insists are examples of judicial misconduct. R&R at 8. Petitioner was shown to be in possession of crack cocaine, regardless of what any further tests could show. There was no prejudice from the trial court's decision to not conduct further tests. Contrary to what Petitioner says, the trial court did rule on the suppression issue, (Ex. EE, II, and MM), and Petitioner could have appealed this ruling but did not. Thus, Petitioner received full and fair litigation of the issue and was not subjected to judicial misconduct.

### III.   Petitioner's Motion Under Rule 54 and 55

Petitioner filed a Motion for Entry of Default and Judgment under Rule 54(d) and Rule 55(b)(2) because Respondents have not responded to the Reply and Objection. (Doc. 21). Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed . . . to defend" then the court must enter judgment against that party. Fed. R. Civ. P. (55)(a). The Respondents did defend their position against the Petitioner. Respondents filed their Answer to the Petition on October 25, 2010. (Doc. 15). There is no requirement for Respondents to subsequently answer Petitioner's Reply and Objection as well.

### IV.   Conclusion

**IT IS ORDERED** that Petitioner's Motions for Entry of Default (Docs. 17 and 21) are denied.

**IT IS FURTHER ORDERED** that the Report and Recommendation is accepted and adopted (Doc. 19), the objections are overruled (Doc. 20), the Petition in this case is denied (Doc. 1), with prejudice, and the Clerk of the Court shall enter judgment accordingly.

/ / /

/ / /

/ / /

- 14 -

**IT IS FINALLY ORDERED** that pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

DATED this 6th day of April, 2011.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge